# Geraldine Claiborne Dawson v. Elizabeth Tumlinson et al.

No. A-3043. Decided July 18, 1951.
Rehearing overruled October 3, 1951.
(242 S. W., 2d Series, 191.)

*Massey, Hodges & Moore* and *Otto Moore, Jr.,* of Columbus, for petitioner.

The Court of Civil Appeals erred in holding that plaintiff has not made out a prima facie case of uninterrupted occupancy of the premises by tenants for a period of ten consecutive years. McKee v. Stewart, 139 Texas 260, 162 S.W. 2d 948; Geo. C. Vaughan & Sons v. Harrisburg National Bank, 195 S.W. 2d 613, writ dismissed; Whitehead v. Foley, 28 Texas 1.

*J. M. Rutta* and *G. F. Steger,* both of Columbus, for respondents.

There was no error in the Court of Civil Appeals holding that there was insufficient evidence to show ten consecutive years of adverse possession, which was necessary to establish title by limitation. Thornton v. Central Loan Co., 164 S.W. 2d 248, writ refused; Powell v. Wiley, 141 Texas 74, 170 S.W. 2d 470; Woolridge v. Hancock, 70 Texas 18, 6 S.W. 818.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

The property in controversy is an improved lot in the city of Columbus, Texas. Petitioner, as plaintiff in the trial court, sought recovery of title and possession on two grounds: first that her parents, her predecessors in title, became the owners of the property by parol gift, with possession and the making of permanent and valuable improvements before the death of the donor; and second, that her parents acquired title by adverse possession for more than ten years after the donor's death. The trial court, after petitioner had introduced her evidence, instructed the jury to return a verdict for respondents, and the judgment that petitioner take nothing was affirmed by the Court of Civil Appeals. That court held that while there

was evidence tending to prove a present parol gift and that the donees made permanent and valuable improvements, there was no evidence of possession by the donees during the donor's life, and held further that there was no evidence sufficient to raise the issue of continuous adverse possession for ten years by petitioner's parents after the death of the donor. 236 S. W. 2d 160.

The evidence as to the existence of an intention on the part of Jane Davis, the donor, to make a present gift of the property to petitioner's parents is meager, some of the testimony appearing to mean, as contended by respondents, that Jane Davis expressed merely an intention or promise either to convey or to devise the property to petitioner's parents at some time in the future. However, two witnesses testified in substance that Jane Davis said or agreed that she was giving the property to petitioner's parents "at that time" and that they should have it "right then". This testimony raised an issue of fact as to the making of the gift.

■ The law in this state as to parol sales and parol gifts of real property was fully and carefully stated in Hooks v. Bridgewater, 111 Texas 122, 229 S. W. 1114, 15 A. L. R. 216, and the law as there stated has been consistently followed. Upson v. Fitzgerald, 129 Texas 211, 103 S. W. 2d 147; Powell v. Wiley, 141 Texas 74, 170 S. W. 2d 470; Maloy v. Wagner, 147 Texas 486, 217 S. W. 2d 667.

"From an early time it has been the rule of this Court, steadily adhered to, that to relieve a parol sale of land from the operation of the Statute of Frauds, three things were necessary: (1) Payment of the consideration, whether it be in money or services. (2) Possession by the vendee. And (3) The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. * * * * * * * * * * * * * * * * Each of these three elements is indispensable, and they must all exist." 111 Texas 122, 126-127, 229 S. W. 1114.

The rule as to parol gifts is the same as that with respect to parol sales, except there must be evidence of gift, and of course proof of a consideration is not required. Cauble v. Worsham, 96 Texas 86, 92, 70 S. W. 737.

In the instant case there is but little evidence of the mak-

ing of valuable and permanent improvements with the consent of the donor. We find no evidence of the value of the property or of its rental value. There is testimony that during the donor's life petitioner's parents repaired the porch and put a new roof on it, and that the value of the improvements was "probably sixty or seventy-five dollars". It may be, as held by the Court of Civil Appeals, that the question "whether the value of the improvements was substantial for the jury." Davis v. Douglas, (Com. App.) 15 S.W. 2d 232; Jones v. Mawman, 145 Texas 596, 200 S. W. 2d 819. However, in view of the facts as to possession during the life of the donor, which seem to have been fully developed, it is unnecessary to express definitely an opinion with respect to improvements.

The weakness of petitioner's claim of title through parol gift is in the evidence as to possession by the donees. The opinion in Hooks v. Bridgewater, 111 Texas 122, 129-130, 229 S. W. 1114, 15 A. L. R. 216, emphasizes the paramount importance of the indispensable element of possession to support a parol sale or gift of land. It is said in that opinion that "a further strong reason for the requirement of possession is that without it the existence of the contract rests altogether in parol evidence, which common experience has shown to be too unstable and uncertain to be permitted to work a divestiture of title to real property", and further that "if there has been no surrender of the possession of the land, the contract is not within the rule and is incapable of enforcement." 111 Texas 122, 129, 229 S.W. 1114.

At early common law surrender of possession of land was essential to change of title or ownership and conveyance of the freehold interest was accomplished by delivery of possession of the land, or "livery of seisin", although a writing attesting the livery of seisin usually accompanied the ceremony. Tiffan's Law of Real Property (3rd Ed.) Vol. 1, Sec. 22, p. 29; 16 Am. Jur., p. 444, Sec. 12. Later the deed became more important, and statutes of conveyance were enacted. See Article 1288, Revised Civil Statutes of 1925. Dean Roscoe Pound has expressed the very reasonable opinion that the courts of chancery, in beginning, soon after the enactment of the statute of frauds, to take cases out of the operation of the statute where the purchaser had been put in possession, was influenced by ideas of livery of seisin. He directed attention to the fact that "putting the purchaser in possession was taken to be the substance of a common law conveyance." 33 Harvard Law Review, pp. 929, 939-940. This early common law principle, we believe,

accounts in part at least for the use of possession by the vendee or donee as an essential element to support title under parol sale or gift. And, as said in the quotation set out above from the opinion in Hooks v. Bridgewater, without the requirement of possession the existence of the contract, sale or gift would rest altogether in parol evidence. These observations, doubtless unnecessary in view of the settled law, have been made to point out the importance of proof of such possession as will clearly attest the sale or the gift when a parol sale or gift of land is sought to be sustained. In the absence of a deed the transfer of possession is the most reliable evidence of a change of ownership.

█ The following is the substance of the testimony offered by petitioner as to the donees' possession of the property under the gift from Jane Davis and during her lifetime: The property is a small house and lot owned by Jane Davis, a negro, where she resided alone after the death of her husband. She was feeble, nearly blind, and not able to take care of herself. Petitioner's parents, Len and Lena Claiborne, negroes, lived across the street from Jane Davis. She agreed with them that she would give them her property, turn it over to them, if they would take care of her as long as she lived. They agreed to do so, and during the remainder of her life they took meals to her, cleaned the house, and saw that she had wood and "managed the place". They repaired the porch and put a new roof on it, spending about sixty or seventy-five dollars, repaired the pump and the fence, and made repairs on the house whenever they were needed. The foregoing is a statement of all of the evidence suggesting possession or the exercising of control over the property by Len and Lena Claiborne during Jane Davis' life. Jane continued to live in the house until she died, and Len and Lena Claiborne continued to live in their house across the street. There is no evidence that Len and Lena Claiborne paid taxes on the property or rendered it for taxation.

In our opinion, the evidence offered by petitioner neither proves nor tends to prove a transfer of possession of the property from the donor to the donees. The extent of the proof is that petitioner's parents cared for Jane Davis by taking meals to her, cleaning the house and seeing that she had wood and that they made repairs on the house, the pump and the fence. There is no evidence that repairs were made to such an extent or so frequently as to indicate full control or ownership. One witness testified in general terms that Len and Lena Claiborne "managed the place", but the nature and extent of the management is not shown.

In Powell v. Wiley, 141 Texas 74, 170 S. W. 2d 470, the court, in discussing the possession required to be had by the donee to support a parol gift of land speaks of "the right of control which pertains to the status of owner". In Thornton v. Central Loan Company, 164 S. W. 2d 248, application for writ of error refused, the Court of Civil Appeals discusses at some length, and quotes from authorities which show, the nature of the possession required to support a parol gift or sale of real property. The conclusion is expressed that the gift "must be followed by possession which in itself attests the fact that such possession is intended as a deliverey under the parol gift or agreement." Quotation is made from the decision of another state that the "possession must be actual, open and notorious to serve as an act of part performance, and with such publicity as attends an open transfer of possession in such a way that the fact itself attests that the parties have bargained".

The evidence in the instant case does not tend to prove possession by the donee evidencing a "right of control which pertains to the status of owner", nor tend to prove "possession which in itself attests the fact that such possession is intended as a delivery under the parol gift."

Petitioner insists that the donees' possession need not exclude the donor and that actual occupancy by the donee is not essential, citing Davis v. Douglas, (Com. App.) 15 S. W. 2d 232, Scott v. Cliett, 213 S. W. 2d 562, and Johnson v. Perkins, 140 S. W. 2d 282. There are important differences between the facts of those cases and the evidence in the case before us. In Davis v. Douglas the donor surrendered possession and control of the property to the donee, who moved into the dwelling. A short time thereafter the donee and her husband took the donor to live with them, but they continued to occupy the property and to exercise control over it. It was held that the possession taken and held under the gift was such as to meet the requirement of the rule, notwithstanding the fact that the donor lived on the premises with the donee. Scott v. Cliett, 213 S. W. 2d 562, is primarily a case of parol trust, though it makes also the holding that there was a parol gift. In that case the parties jointly occupied the property, under an agreement made when the title was taken in the name of one of them that the property would belong solely to the other, who had provided a great part of the purchase price. That instant case is different from both of the cases above discussed in that here the donees never occupied the property during the life of the donor, who remained its sole occupant as long as she lived.

The appellant in Johnson v. Perkins, 140 S. W. 2d 282, made the contention that the petition of appellees who claimed farm land by parol gift was insufficient because it did not directly allege that they moved upon the land and took actual possession of it under the gift. The court held that the petition contained sufficient allegations of possession, which were that the appellees, the donees, immediately took possession of the land, used and controlled it and exercised acts of ownership over it such as farming the land, harvesting the crops, building fences, cutting wood for use, and all such acts as were necessary for operating the land as a farm. The record in the instant case contains no evidence of such use or control.

■ In our opinion, the trial court's action in instructing the jury to return a verdict for respondents would have been correct but for the evidence as to adverse possession of the property after the death of Jane Davis.

With respect to petitioner's claim of title through adverse possession under the ten year statute, the Court of Civil Appeals expressed the opinion that the evidence adduced by petitioner was sufficient to prove, or at least raise the issue, that the petitioner's parents, Len and Lena Claiborne, began occupying the property through their tenants either at or after the death of Jane Davis, and that the evidence was certainly sufficient to raise the issue that the occupancy by the tenants was adverse possession. After carefully reading the statement of facts and studying the briefs we agree with those conclusions, and deem it unnecessary to discuss the evidence which supports them.

The contention most strongly presented by respondents as to the question of adverse possession, and sustained by the Court of Civil Appeals, is that there is no evidence sufficient to show *uninterrupted* possession by the tenants for ten consecutive years. Adverse possession of land need not be by actual individual occupancy. If the possession is by tenant of the claimant it is in law the claimant's possession and he may avail himself of its benefits. Whitehead v. Foley, 28 Texas 1, 15; Elliott v. Mitchell, 47 Texas 445; Taylor v. Dunn, 108 Texas 337, 193 S.W. 663; Jack v. Dillon, 6 Texas Civ. App. 192, 25 S. W. 645, application for writ of error refused; Harris v. Iglehart, 52 Texas Civ. App., 6, 113 S. W. 170.

■ While the statute, Article 5514, Revised Civil Statutes of 1925, requires continuous possession, it has been held that abso-

lute continuity is not essential. "It is a well recognized doctrine in this court, that the fact of the premises being left without an occupant for a short time, between the removal of one tenant and the entry of his successor, where there is no intention of abandoning the possession, does not stop the running of the statute. A short and temporary vacation of the premises is the ordinary and frequently the unavoidable incident of the change of tenants. If the attendant circumstances are such, that a reasonably and prudent man would not be induced to suppose the possession has been abandoned, it cannot be insisted that the running of the statute has been interrupted." Whitehead v. Foley, 28 Texas 1, 15. See also Elliott v. Mitchell, 47 Texas 445; Taylor v. Dunn, 108 Texas 337, 193 S. W. 663; Morrison v. Bennette, 228 S. W. 307; Burnham v. Hardy Oil Company, 108 Texas 555, 195 S. W. 1139; Allison v. California Petroleum Corp., 158 S. W. 2d 597.

■ The record contains the testimony of several witnesses for petitioner showing that between the time of the death of Jane Davis in 1923 and the time of the death of Len and Lena Claiborne, petitioner's parents, in 1949, the property in controversy was occupied by tenants of Len and Lena Claiborne. It is true, as respondents insist, that the testimony is not very definite. It does not give the date of the beginning of the occupancy by the first tenant or the length of his tenancy, or the dates when the occupancy by succeeding tenants began and ended. We believe, however, that there is enough evidence to satisfy reasonably the requirement of continuity of possession, and that there is evidence from which the jury could reasonably have inferred that the property was possessed by petitioner's parents through their tenants for more than ten years before the institution of this suit and could reasonably have inferred that there were no such intervals between the occupancies of the different tenants as should induce the belief that the possession had been abandoned. Some of the testimony will be stated briefly.

R. R. Hadden, a resident of Columbus since 1902, who was well acquainted with Jane Davis and Len and Lena Claiborne and was familiar with the property in controversy, testified that after Jane Davis died he saw Len and Lena Claiborne around the house looking after repairs, that he knew they rented the house, although he could not say "off-handed" to whom, and that they kept the place in repair so that it would be livable and could be rented. Mrs. Hadden testified that after Jane Davis died Len and Lena Claiborne took possession of the

house but did not live in it; that she saw people living in the house but did not know their names except that she knows "Lizzie," who now lives there.

Mamie Brown Hill, who lived next door to the residence of Len and Lena Clairborne for many years and across the street from the property in controversy, testified in substance as follows: After the death of Jane Davis, Len Claiborne worked around the house and made repairs on it. Len and Lena Clairborne rented the property after Jane Davis' death. They rented it to several families whose names she could not recall. There was a white family, then a Mexican family, then the Roaches and Lizzie Carter. *She does not believe that the place has been vacant since Jane Davis died.* She does not remember the dates either the Mexicans or Lizzie Carter moved into the house, but she saw both the Mexicans and Lizzie Carter go over to Lena Claiborne's house and pay rent to her. Mrs. Heinsohn testified that she lived in the Jane Davis house "about ten or eleven years ago" and that she rented the house from Lena Claiborne and paid rent to her.

The substance of the testimony of petitioner, Geraldine Claiborne Dawson, daughter of Len and Lena Claiborne, as to adverse possession of the property after the death of Jane Davis is: She lived with her parents in a house in Columbus near the property in controversy until they died, and now lives there. After Jane Davis died the property was rented by petitioner's parents to a number of tenants. She gave the names of six different tenants, the last being Lizzie Carter, who occupied the property, one after the other. There has never been a very long period of time since Jane Davis died until now when the house was vacant. There has always been someone there. Each of the tenants paid rent. She saw them pay rent, and sometimes they paid the rent to her and she turned the money over to the person to whom it belonged. Lizzie Carter moved into the property as tenant in 1942 and still occupies it. After the death of Len and Lena Clairborne, Lizzie Carter pair the rent to petitioner until October, 1949.

■ Respondents insist that petitioner's testimony as to continuous possession by tenants should be disregarded as hearsay because she testified on cross examination that she lived in Glidden for two years beginning in 1934, and spent a few months in San Antonio in 1945 and a few months in Houston in 1946. These facts bear upon the weight of her testimony rather than upon its admissibility.

■ The briefs discuss the question of the admissibility of petitioner's testimony as to payments of rents that she saw made by tenants of her father and mother. This on account of "the dead man's statute", Article 3716, Revised Civil Statutes of 1925. The question is not so presented by the record that a definite ruling can be made. It cannot be determined to what parts of the testimony of the witness, given without objection on direct examination, either the objection finally made or the court's ruling sustaining it is intended to apply. This uncertainty can be avoided on another trial. It is our opinion that the evidence which has been set out, exclusive to petitioner's testimony as to payments of rent, was sufficient to raise the issue of adverse possession for the jury's determination.

In our opinion the evidence does not sustain petitioner's further contention that she made a prima facie case for recovery of title by reason of prior possession. Lund v. Doyno, 127 Texas 19, 91 S. W. 2d 315; Watkins v. Smith, 91 Texas 589, 45 S. W. 560; Bates v. Bacon, 66 Texas 348, 1 S. W. 256.

The judgments of the Court of Civil Appeals and the District Court are reversed and the cause is remanded to the District Court.

Opinion delivered July 18, 1951.

Rehearing overruled October 3, 1951.